# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Lennett Gensel, | Civil File No. 13-cv-1196 RTR |
| Plaintiff, | |
| vs. | **DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STAY** |
| Performant Technologies, Inc., | |
| Defendant. | |

## INTRODUCTION

Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") in 1991 in an effort to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls" made by telemarketers who had been blasting out advertising by the use of both "facsimile machines and automatic dialers." S. Rep. 102-178, *reprinted in* 1991 U.S.C.C.A.N. at 1968. The Legislative History notes that the TCPA was adopted as a response to the "increasing number of consumer complaints" regarding "telemarketing calls and communications." *Id.* at 1969.

After the Act was passed, the Federal Communications Commission ("FCC"), which is charged with the power to implement and construe the TCPA, recognized that Congress passed the TCPA to protect consumers from unrestricted telemarketing practices, not *non*-telemarketing calling activities. *See In the Matter of Rules &*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 19 F.C.C. Rcd. 19215 (2004).

Here, Plaintiff Lennett Gensel asserts claims against Performant Technologies, Inc. ("PTI") based on PTI's attempts to reach Plaintiff regarding a consumer debt placed with PTI for collection. Plaintiff's claims are based on the allegation that PTI placed calls to her cellular telephone utilizing an automatic telephone dialing system ("ATDS") without her prior express consent.

The resolution of Plaintiff's TCPA claims will turn, in part, on two important issues currently pending before the FCC in Petitions for Declaratory Rulings: (1) whether the TCPA applies to *non*-telemarketing calling activity; and (2) the definition of an ATDS under the TCPA.

An FCC ruling regarding whether the TCPA encompasses *non*-telemarketing calls *or* the definition of an ATDS under the TCPA potentially would be dispositive of Plaintiff's claims. Therefore, we respectfully submit that this Court should stay this case under the primary jurisdiction doctrine.[1]

---

[1] Pursuant to the parties' agreement, the Court entered an Order on August 14, 2014 referring this matter to Magistrate Judge Callahan, Jr. for a court-sponsored mediation. Accordingly, Defendant further moves that the requested stay be held in abeyance until after the parties have completed mediation which is currently scheduled for October 8, 2014. (*See* Docs. # 28, 29.) In the event the mediation is successful, this motion for a stay will become moot.

# FACTUAL BACKGROUND

A.  **Allegations in the Complaint.**

The TCPA provides that certain entities must not "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party), using any automatic telephone dialing system or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii). The term "automatic telephone dialing system" means "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[.]" 47 U.S.C. § 227 (a)(1).

Here, Plaintiff TCPA claims are premised on the allegation that PTI used an ATDS to call her cellular phone without her prior express consent. (Doc. # 16 at ¶¶ 23-40, 44-51.)

B.  **The Pending Petitions for FCC Declaratory Rulings.**

Petitions for Declaratory Rulings under consideration by the FCC ask the agency to decide (1) whether the TCPA applies to *non*-telemarketing calling activities, and (2) what the definition of an ATDS is under the TCPA.[2] (Klander Dec., Ex. A (*In re Commc'n Innovators' Pet. for Declaratory Ruling,* (June 7, 2012) ("CI Petition")); Ex. B (*Petition for Rulemaking of ACA International,* (January 31, 2014) ("ACA Petition").)

---

[2] "A court may only take judicial notice from sources 'whose accuracy cannot reasonably be questioned,'" such as declaratory ruling petitions filed with the FCC, and subsequent filings by the FCC and other parties on the same docket. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1084 (7th Cir. 1997) (citing Fed. R. Evid. 201).

3

1. The CI Petition.

On June 7, 2012, Communication Innovators ("CI") filed a Petition for Declaratory Ruling with the FCC. (Ex. A.) The CI Petition asks the FCC to "distinguish between telemarketing and informational calls[.]" (*Id.*) In particular, the CI Petition contends "today's predictive dialers . . . are used for a number of innovative non-telemarketing purposes that simultaneously bring benefits to consumers and businesses" such as "allowing businesses with a legitimate need to contact a large number of specific accountholders or other consumers to do so accurately, efficiently, and cost-effectively." (*Id.* at 18-19.)

Four months after CI filed its Petition, the FCC issued a public notice seeking comment on the Petition. (Ex. C (FCC Pub. Notice, Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Declaratory Ruling from Communication Innovators (Oct. 16, 2012)).) The deadline for comments and reply comments closed in November 2012. (*Id.*) Numerous consumer and industry groups commented, with most generally supporting CI's Petition. (Ex. D (Reply Comments of Communication Innovators, CI Petition, (Nov. 30, 2012)).)

Recently, the FCC has indicated that it may imminently issue a decision regarding the CI Petition. On September 27, 2013, the FCC released an exchange of correspondence between several Members of Congress and the then-FCC Chair (and the Acting Chief of the Consumer and Governmental Affairs Bureau), in which the Commission stated that "[a] draft order to resolve the [CI] Petition is under consideration by the Commission, and Communication Innovators has met with the staff recently to discuss the matter." (Ex. E.) The letter from Congress (signed by three Members) to the then-FCC Chair was dated June

4

19, 2013, and the FCC's response, though not released until September 27, 2013, was dated September 10, 2013. This ongoing activity regarding the CI Petition suggests that the FCC likely will issue relevant guidance in the near future.

2.   The ACA Petition.

On January 31, 2014, ACA International ("ACA") filed a Petition for Rulemaking with the FCC requesting the Commission to, among other things, clarify the definition of an ATDS under the TCPA to "(1) confirm that not all predictive dialers are categorically [ATDS']; (2) confirm that 'capacity' under the TCPA means present ability; (3) . . . (4) establish a safe harbor for autodialed 'wrong number' non-telemarketing calls to wireless numbers." (Ex. B. at i – ii, 6-12. 15-18.)

On February 21, 2014, the FCC issued a public notice seeking comments on ACA's Petition. (Ex. F (FCC Pub. Notice, Consumer and Governmental Affairs Bureau Reference Information Center Pet. for Rulemaking).) The deadline for comments was March 24, 2014. The deadline for reply comments was April 8, 2014.

## ARGUMENT

### THE COURT SHOULD STAY THIS ACTION UNDER THE PRIMARY JURISDICTION DOCTRINE PENDING FCC GUIDANCE, POTENTIALLY DISPOSITIVE OF PLAINTIFF'S TCPA CLAIMS.

Primary jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making. *Interstate Commerce Comm'n v. All-Am., Inc.*, 505 F.2d 1360, 1362 (7th Cir. 1974). The primary jurisdiction doctrine is properly invoked "whenever enforcement of the claim requires the resolution of issues which . . . have been placed within the special competence of an administrative body." *United States v. Western*

5

*Pacific Railroad Co.*, 352 U.S. 59, 64 (1956). "It represents a recognition of the need for an orderly coordination between the functions of court and agency in securing the objectives of their often overlapping competency." *Interstate Commerce Comm'n*, 505 F.2d at 1362 (citing *Far East Conference v. United States*, 342 U.S. 570, 575 (1952)).

There is no fixed formula for determining whether to apply the doctrine of primary jurisdiction. *Western Pacific,* 352 U.S. at 64. Rather, in each case the court considers whether the reasons for the doctrine are present and whether applying the doctrine will aid the purposes for which the doctrine was created. *Id.* at 64.

One reason courts apply the doctrine of primary jurisdiction is to obtain the benefit of an agency's expertise and experience. *Far East,* 342 U.S. at 574 ("[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over."); *Western Pacific,* 352 U.S. at 64-65 ("Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.").

Primary jurisdiction doctrine is also applied to promote uniformity and consistency within the particular field of regulation. *Western Pacific,* 352 U.S. at 64-65; *see also Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976). As noted below, there is already a disagreement among the courts regarding the application of the TCPA, which a ruling from the FCC should clarify.

### A. Plaintiff's Claims Require Resolving Whether the TCPA Applies to Non-Telemarketing Calls and the Definition of an ATDS.

To prove her TCPA claims, at a minimum, Plaintiff must prove that PTI used an ATDS to call her cell phone without her consent. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff admits that the calls at issue are debt collection calls; not telemarketing calls. (Doc. # 16 at ¶¶ 13, 14, 27.) Yet Plaintiff goes on to equate debt-related calls with "telemarketing," thus raising the very issues pending before the FCC in the CI Petition. The FCC's declaratory ruling on the CI Petition will provide guidance on whether debt-related calls (*i.e.*, non-telemarketing calls) fall within the TCPA's prohibitions.

Resolving the TCPA claims in the Complaint will also require the resolution of the definition of an ATDS under the TCPA. If the FCC rules, as requested in the ACA Petition, that an ATDS must have the "present ability" of a dialing system or establishes a safe harbor for autodialed "wrong number" non-telemarketing calls, Plaintiff's TCPA claims would fail on that point as well.

### B. The Issues Presented by Plaintiff are Squarely Within the FCC's Authority.

Congress explicitly gave the FCC the power to implement and construe the TCPA. 47 U.S.C. § 227(b)(2). Specifically, the TCPA empowers the FCC to prescribe regulations under the Act; to exempt calls from the requirements of the Act; to intervene in suits filed by state attorneys general; and to enforce the Act and its accompanying regulations. *Id.* Simply put, Congress vested the FCC with "considerable authority" to implement and construe the TCPA. *Id.*

Consistent with that authority, the FCC has created a complex regulatory scheme that governs telemarketing. It has done so by adopting new regulations as technologies and business practices evolve. *See, e.g., In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 19 F.C.C. Rcd. 19215 (2004); *see also Fried v. Sensia Salon, Inc.,* 2013 WL 6195483, at *5 (S.D. Tex. Nov. 27, 2013). In determining that a stay was warranted in *Fried*, the court stated that "[t]he FCC has regulatory power over this [telemarketing] industry and can respond to changes in the industry through regulations, reports and orders, declaratory rulings, and other available tools." *Id.* In fact, the FCC has enacted rules and revisions regarding the permissible scope of automated telephoning activity under the TCPA dozens of times since 1992. *See, e.g.*, 47 C.F.R. § 64.1200 (rule-making history).

Given the specific role Congress conferred on the FCC under the TCPA, the FCC occupies the best position to determine the scope of the TCPA, including whether the TCPA applies to collection calls as well as the scope of the definition of an ATDS under the TCPA. Resolving these questions will allow the FCC to reconcile its prior rulings and provide direction on the purpose of the TCPA. A ruling from the FCC on any one of the following issues: (1) declaring non-telemarketing calling activity as outside the TCPA's domain; (2) declaring that an ATDS must have the "present ability" for random/sequential automated dialing; or (3) establishing a safe harbor for "wrong number" non-telemarketing calls, will dispose of Plaintiff's TCPA claims.

As one court recently observed in applying primary jurisdiction doctrine to grant a collection agency defendant's motion to stay a TCPA action pending the FCC's determination of the issues raised by the CI Petition:

> The law is unclear whether Congress intended the TCPA to prevent [the use of an autodialer to call cellular phones for debt collection purposes]. Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity. Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC [*in In Re Communications Innovators*]. The issue is clearly one of policy within those bodies, and guidance on the "capacity" of autodialing systems would further clarify the law that [the plaintiff] seeks to enforce in this action.

*Hurrle v. Real Time Resolutions, Inc.*, 2014 WL 670639, at * 1 (W.D. Wash. Feb. 20, 2014).

As in *Hurrle*, the issues raised by Plaintiff here are being considered by the FCC as it analyzes the CI and ACA Petitions. A stay of this case pending the resolution of both Petitions under the FCC review is therefore warranted here as well.

C. **Regulating Non-Telemarketing Calls Under the TCPA Requires Agency Expertise and National Uniformity.**

In enacting the TCPA, Congress intended to "promote a uniform regulatory scheme under which telemarketers would not be subject to multiple, conflicting regulations. . . . [and] to avoid burdensome compliance costs for telemarketers." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14064 (2003). "[T]hrough the application of the doctrine of primary jurisdiction, the courts and the FCC should be able to prevent both inconsistent applications of FCC rules and serious judicial encroachment upon FCC responsibilities." *Ellis v. Tribune TV Co.*, 363 F.Supp. 2d 121, 132

9

(D. Ct. March 21, 2005), *rev'd on other grounds,* (quoting *S. Cent. Bell Tel. Co. v. La. Pub. Serv. Comm 'n,* 744 F.2d 1107, 1118 (5th Cir. 1984), *vacated on other grounds,* 476 U.S. 1166 (1986).

"Courts should be especially solicitous in deferring to agencies that are simultaneously contemplating the same issues. Because an agency 'is currently conducting an investigation into the lawfulness of the [practice] under attack,' 'to permit the court below initially to determine [the issue] would invite the very disruption . . . that the doctrine is meant to discourage.'" *Ellis v. Tribune Television Co.*, 443 F.3d 71, 88 (2d Cir. 2006) (quoting *Danna v. Air France*, 463 F.2d 407, 412 (2d Cir. 1972)).

Here, there is a significant risk of inconsistent applications of the FCC rules, specifically as to whether the TCPA applies only to telemarketing activity and the scope of the definition of an ATDS. Indeed, numerous TCPA actions regarding collection calls have been filed just this year alone. The sheer volume of pending lawsuits heightens the risk that individuals and companies will be subject to decisions pointing in opposite directions.

In fact, courts have already disagreed as to whether the TCPA applies to *non-*telemarketing telephone calls, such as debt collection calls. *See, e.g.*, *Franasiak v. Palisades Collection, LLC.*, 822 F.Supp.2d 320 (W.D.N.Y. Sept. 30, 2011) (dismissing the plaintiff's claims because "calls to nondebtors are commercial calls and that such calls do not adversely affect privacy rights protected under the TCPA"); *Meadows v. Franklin Collection Serv., Inc.*, 414 Fed. Appx. 230, 235 (11th Cir. 2011) ("[T]he FCC has determined that all debt-collection circumstances are excluded from the TCPA's coverage, and thus the exemptions

10

apply when a debt collector contacts a non-debtor in an effort to collect a debt"); *McBride v. Affiliated Computer Servs., Inc.*, 2011 WL 841176, at *3 (D. Or. March 7, 2011) ("Regulations implementing the TCPA created exemptions for commercial calls when a caller has an established business relationship with the person called," such as debt collection calls); *Roy v. Dell Financial Services, LLC*, 2012 WL 3678551, at *3 (M.D. Pa. July 12, 2013), *rev'd. on other grounds*, (holding that all debt collection circumstances are excluded from TCPA's coverage); *but see, e.g.*, *Iniguez v. The CBE Group*, 2013 WL 4780785, *5 (E.D.Cal. Sept. 5, 2013) ("[T]he federal regulations applicable to the TCPA do not contain a debt collector exception."); *Blair v. CBE Group, Inc.*, 2013 WL 2029155, at *3 (S.D. Cal. May 13, 2013) (holding the TCPA applies to debt collectors).

Likewise, courts have disagreed over the definition of an auto-dialer under the TCPA. *De Los Santos v. Millward Brown, Inc.*, 13-80670-CV, 2014 WL 2938605, at *6 (S.D. Fla. June 30, 2014) (system must have "present" capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and ... to dial such numbers); *Dominguez v. Yahoo!, Inc.*, No. 13–1887, 2014 W L 1096051, at *4 n.4, *5 (E.D. Pa. Mar. 20, 2014) (granting summary judgment for the defendant because there was no evidence that the internet company Yahoo!'s computer system had the present capacity to randomly or sequentially generate numbers); *Gragg v Orange Cab Company, Inc.*, No. C12-0576RSL, 2014 WL 494862, at *3 (W.D. Wash. Feb. 7, 2014) (holding that a system was not an ATDS under the TCPA because it did not have the "present . . . capacity to store, produce, or call randomly or sequentially generated telephone numbers" and that considering its "potential" capacity to do so was too broad); *Hunt v. 21st Mortg.*

11

*Corp.*, No. 2:12–CV–2697–WMA, 2013 WL 5230061, at *3 (N.D. Ala. Sept. 17, 2013) (holding that a system must have the "present state" capacity to qualify as an ATDS under the TCPA) (emphasis in original); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 725 (N.D. Ill. 2011) (holding that systems that "call lists of known telephone numbers" are not random generators and therefore not ATDS' under the TCPA); *but see, e.g., Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (holding that predictive dialer has the capacity to store or produce numbers and dial those numbers at random and therefore is an ATDS under the TCPA); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010) (system "need only have *the capacity* to store or produce numbers" to be an ATDS under the TCPA) (emphasis in original); *Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2009 WL 2365637, at *4-5 (S.D. Fla. June 9, 2009) (holding that a "non-predictive, non-sequential, and non-random" system was an ATDS under the TCPA because it did not require human intervention to dial once the numbers were manually entered).

Simply put, uniformity is missing regarding these issues. As such, we submit that a stay should be issued to allow the FCC to rule on the pending Fee Petitions. Moreover, the uniformity principle applies with particular force here, as the TCPA generally is a strict liability statute, subjecting defendants to potentially staggering monetary damages that could be based on a faulty interpretation of the statute. Staying this action causes no hardship to Plaintiff, but doing so will permit the FCC to rule on the pending Petitions which should preclude liability findings that later turn out to be incorrect.

### D. Other Courts Have Stayed TCPA Actions.

A number of courts faced with similar motions to stay TCPA actions on the basis of primary jurisdiction have done so. *See, e.g.*, *Passero v. Diversified Consultants, Inc.,* 13-CV-338C, 2014 WL 2257185 (W.D.N.Y. May 28, 2014) (granting stay due to petitions before FCC); *Higgenbotham v. Diversified Consultants, Inc.*, 13-2624-JTM, 2014 WL 1930885, at *3-4 (D. Kan. May 14, 2014); *Hurrle,* 2014 WL 670639, at *1 (granting the collection agency's request to stay pending resolution of the FCC's Petitions and holding it was warranted because the "issue is clearly one of policy within those bodies"); *Couser v. Pre-Paid Legal Servs., Inc.*, 2014 WL 197717, at *6 (S.D. Cal. Jan. 16, 2014) ) ("[T]he Court would be inclined to stay this case under the primary jurisdiction doctrine" pending FCC guidance on the issue); *Mendoza v. UnitedHealth Group, Inc.*, 2014 WL 722031, at *1 (N.D. Cal, Jan. 6, 2014) (granting motion to stay pending resolution of FCC's Petition); *Fried v. Sensia Salon, Inc.*, 2013 WL 6195483, at *6 (S.D. Tex. 2013) (same); *Glauser v. Twillo, Inc.*, 2012 WL 259426, at *3 (N.D. Cal. 2012) (same).

Given the anticipated rules by the FCC as to the issues at the heart of this lawsuit, PTI urges this Court to reach the same conclusion as the courts in *Hurrle*, *Passero*, *Higgenbotham, Mendoza, Couser, Fried,* and *Glauser,* and stay this action.

### CONCLUSION

For the reasons set forth above, Defendant PTI respectfully requests that this matter, including discovery, be stayed pending the FCC's rulings on the CI Petition and the ACA Petition.

13

|  |  |
|---|---|
|  | **BASSFORD REMELE**<br>*A Professional Association* |
| Dated: September 2, 2014 | By    s/Jessica L. Klander<br>Michael A. Klutho (MN #186302)<br>Jessica L. Klander (MN #392290)<br>*Attorneys for Performant Technologies, Inc.*<br>33 South Sixth Street, Suite 3800<br>Minneapolis, Minnesota 55402-3707<br>Telephone: 612-333-3000<br>Facsimile: 612-333-8829<br>mklutho@bassford.com<br>jklander@bassford.com |

14

Case 2:13-cv-01196-RTR Filed 09/02/14 Page 14 of 14 Document 31