# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LENNETT GENSEL,**

    Plaintiff,

-vs-                                           Case No. 13-C-1196

**PERFORMANT TECHNOLOGIES, Inc.,**

    Defendant.

## DECISION AND ORDER

Lennett Gensel's cell phone provider assigned her a number that was previously assigned to a woman who defaulted on a student loan. Performant Technologies, Inc. repeatedly called that number in an attempt to collect on the debt. Gensel alleges that by doing so, Performant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Gensel moves for partial summary judgment, but Performant moves to stay pending rulings on two petitions currently before Federal Communications Commission ("FCC").

The TCPA provides that certain entities must not "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party), using any automatic telephone dialing system or prerecorded voice … to any telephone number assigned to a …

cellular telephone service … or any service for which the called party is charged for the call." § 227(b)(1)(A)(iii). The term "automatic telephone dialing system" ("ATDS") means "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator." § 227(a)(1).

One petition asks the FCC to decide whether the TCPA applies to non-telemarketing calling activities. *In re Comm'n Innovators' Pet. For Declaratory Ruling* (June 7, 2012) (the "CI Petition") (asking the Commission to "clarify, consistent with the text of the TCPA and Congressional intent, that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not [ATDS] under the TCPA and the Commission's TCPA rules"). Another asks the FCC to "(1) confirm that not all predictive dialers are categorically [ATDS]; (2) confirm that 'capacity' under the TCPA means present ability; (3) clarify that prior express consent attaches to the person incurring a debt, and not the specific telephone number provided by the debtor at the time a debt was incurred;[1] and (4) establish a safe harbor for autodialed 'wrong number' non-telemarketing calls to wireless numbers." *Petition for Rulemaking of*

---

[1] The third issue is not relevant in this case.

*ACA Int'l* (January 31, 2014) (the "ACA Petition"). A ruling on the first petition is expected before a ruling on the second.

Performant's motion invokes the primary jurisdiction doctrine. This doctrine "is really two doctrines." *Arsberry v. Ill.*, 244 F.3d 558, 563 (7th Cir. 2001). In its "central and original form," the doctrine applies "only when, in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review." *Id.* In its "weaker sense," the sense relevant here, the doctrine "allows a court to refer an issue to an agency that knows more about the issue." *In re StarNet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004); *see also Arsberry* at 563 (the doctrine "allows a federal court to refer a matter extending beyond the 'conventional experiences of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight'") (quoting *Nat'l Comm'n Assoc., Inc. v. Am. Telephone & Telegraph Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995)).

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the

- 3 -

existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Courts consider the following factors in making this determination: (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense. *Gilmore v. S.W. Bell Mobile Sys., LLC*, 210 F.R.D. 212, 221 (N.D. Ill. 2001).

The calls in this case were related to debt collection, and the application of the TCPA to such calls is far from clear. *See Passero v. Diversified Consultants, Inc.*, No. 13-CV-338C, 2014 WL 2257185, at *2-3 (W.D.N.Y. 2014) (noting split of authority on the issue). Gensel argues that the FCC settled the issue in a 2008 ruling, but subsequent inconsistent rulings demonstrate that it did nothing of the sort. Hence, the request for a ruling in the CI Petition. Similarly, both petitions seek clarity on the issue

of "capacity." *Higginbotham v. Diversified Consultants, Inc.*, No. 13-2624-JTM, 2014 WL 1930885, at *3 (D. Kan. May 14, 2014) ("Neither the TCPA nor previous FCC orders address the meaning of 'capacity,' specifically, whether it should be interpreted broadly to mean potential capacity or narrowly to mean present capacity"). This is another issue at play in the instant case. *See* Performant's Additional Statement of Facts, ¶ 6 ("The Avaya and Soundbite systems (the systems used to call the subject number) did not have the capacity to randomly or sequentially call phone numbers, nor do they have such capacity now"). Thus, a stay is warranted pending the outcome of either or both petitions. *See Hurrle v. Real Time Resolutions, Inc.*, No. C13-5765 BHS, 2014 WL 670639 (W.D. Wash. Feb. 20, 2014) (granting stay pending CI Petition); *Wahl v. Stellar Recovery, Inc.*, No. 14-cv-6002-FPG, 2014 WL 4678043, at *2 (W.D.N.Y. Sept. 18, 2014) (granting stay pending CI and ACA Petitions).

The ACA Petition also seeks clarity on a troubling aspect of this case: whether there should be a safe harbor for autodialed "wrong number" calls. Instead of simply answering the phone and telling Performant that she wasn't the person they were trying to reach, Gensel (on the advice of counsel) documented all the calls she received for a lengthy period of time. This was a transparent attempt to accumulate damages – at $500 per

- 5 -

violation, Gensel is asking for $94,000 even before taking the issue of treble damages to the jury. Since the TCPA is a strict liability statute, the absence of a safe harbor encourages such opportunistic behavior. Strict liability is particularly inappropriate here because Performant stopped calling Gensel once she finally answered the phone and told them they had the wrong number. Other courts have granted stays in "wrong number" cases in deference to the ACA Petition. *See, e.g., Barrera v. Comcast Holdings Corp.*, No. 14-cv-00343-TEH, 2014 WL 1942829 (N.D. Cal. May 12, 2014). The behavior of litigants such as Gensel may inform the FCC's determination regarding a safe harbor provision.

In sum, a stay of these proceedings under the primary jurisdiction doctrine will promote uniformity in the administration of the TCPA. Instead of furthering a split of authority regarding the issues presented by Gensel's complaint, it is more efficient to simply wait for the FCC to do what it has already been asked to do. The Court will be in a better position to proceed to judgment with definitive guidance from the FCC. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010) (holding that the FCC's orders relating to the TCPA are binding under the Hobbs Act).

- 6 -

Case 2:13-cv-01196-RTR   Filed 01/28/15   Page 6 of 7   Document 61

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Performant's motion to stay [ECF No. 30] is **GRANTED**. The final pretrial conference and trial dates are **CANCELED**;

2. Gensel's motion for partial summary judgment [ECF No. 38] is **DENIED** without prejudice; and

3. Not later than **180 days** following the date of this Order, the parties are directed to file a joint status report advising the Court of the status of the proceedings before the FCC.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2015.

                                        **BY THE COURT:**

                                        _/s/ Rudolph T. Randa_

                                        **HON. RUDOLPH T. RANDA**
                                        **U.S. District Judge**