UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Civil File No.: 13-cv-1196 RTR

Lennett Gensel,

      Plaintiff,

vs.

Performant Technologies, Inc.,

      Defendant.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO CONTINUE STAY**

## INTRODUCTION

This lawsuit is not what Congress intended. Rather, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") in 1991 in an effort to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls" made by telemarketers who had been blasting out advertising using both "facsimile machines and automatic dialers." S. Rep. 102-178, *reprinted in* 1991 U.S.C.C.A.N. at 1968.

Here, Plaintiff Gensel knowingly chose to allow allegedly "unwanted" calls to continue, in concert with her attorneys, in an effort to create supposed TCPA liability.

Any resolution of Plaintiff's alleged TCPA claims will turn, in part, on: (1) whether the TCPA applies to *non*-telemarketing calling activity; (2) the *ultimate* definition of an automatic telephone dialing system (ATDS) under the TCPA; and (3) a caller's liability for calls to reassigned telephone numbers.

When Plaintiff's claims were originally asserted, each of these issues was pending before the FCC in several petitions for declaratory rulings seeking clarification regarding the TCPA. On January 28, 2015, this Court granted Performant Technology, Inc.'s (PTI) Motion to Stay to allow time for the FCC to rule on issues that would have a direct bearing on this case.

On July 10, 2015, the FCC did issue its Declaratory Ruling and Order. (Klutho Dec., Ex. A.) The Ruling attempted to define what equipment falls within the definition of ATDS, addressed consumers right to revoke consent, and established new exceptions for financial and healthcare related calls. Particularly relevant to this case, the Ruling provided a safe-harbor of sorts for companies who unknowingly attempt to call reassigned phone numbers.

Several appeals from the FCC's Ruling have been filed; the resolution of any of which would be dispositive to this case. While the FCC has ruled, appeals of the FCC ruling favor a continued stay of this case pending resolution of the appeals.

## FACTUAL BACKGROUND

A.   **Allegations in the Complaint.**

Plaintiff Lennett Gensel initiated this lawsuit against PTI, claiming alleged violations of the Fair Debt Collection Practices Act ("FDCPA")[1], the Telephone Consumer Protection Act ("TCPA"), and the Wisconsin Consumer Act ("WCA"), plus an alleged invasion of privacy, following call attempts made to her cell phone. Plaintiff's

---

[1] Plaintiff has voluntarily dismissed her FDCPA claim with prejudice.

TCPA claims are premised on an allegation that PTI used an ATDS to call her cellular phone without her prior express consent.

To be sure, Plaintiff is not the actual account holder PTI was attempting to contact. Instead the call attempts were made in an effort to contact Ms. Herring, the actual account holder (Depo testimony of Ms. Herring). Plaintiff admits she learned immediately upon being assigned her cell phone number that the reassigned cell number she was given previously belonged to Ms. Herring (again, the actual student loan borrower PTI was attempting to contact). Admittedly, some of the call attempts to the subject cell number did come from PTI (while many others were placed by other companies and individuals as well).

Based on advice from her attorneys, rather than stop the call attempts by simply answering her phone and informing PTI that she wasn't Ms. Herring, and thereby alerting PTI that she was now assigned Ms. Herring's former cell phone number, Plaintiff allowed the calls to continue all the while documenting the calls and sending the confirming documentation to her attorneys. Once Plaintiff did answer her phone and did inform PTI she was not Ms. Herring, the calls immediately stopped.

B. **FCC decision**

On July 10, a divided FCC issued its Declaratory Ruling and Order. The FCC considered several issues in its Declaratory Ruling and Order; two of which are particularly relevant to this case.

3

### 1. Autodialer.

In its Ruling, the FCC attempted to clarify the scope of what constitutes an ATDS. Pursuant to the TCPA itself, the term "automatic telephone dialing system" is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator[.]" 47 U.S.C. § 227(a)(1).

The FCC concluded that "the TCPA's use of 'capacity' does not exempt equipment that lacks the 'present ability' to dial randomly or sequentially." (Klutho Dec., Ex. A ¶ 15.) Instead, the FCC majority concluded that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." (*Id.* at ¶ 16.)

The FCC Ruling — assuming it is affirmed on appeal — will require a factual inquiry into whether dialing equipment used to call cell numbers has the capacity to store or produce and dial random or sequential numbers. This aspect of the FCC's decision prompted a dissent from two of the five Commissioners, who argued that the FCC's reference to potential future capacity is contrary to the plain meaning of 47 U.S.C. § 227(a)(1). (*Id.* at p. 114, 127.) This issue lives on as it is now on appeal. A stay of this case will give the parties and the court much needed direction on the TCPA "capacity" issue.

### 2. Reassigned phone numbers.

The FCC also considered the TCPA's application to reassigned telephone numbers. The FCC Ruling concluded that callers could incur liability under the TCPA for calling a reassigned telephone number if they have knowledge of a number reassignment. In considering whether there is a safe harbor for callers who make calls without knowledge of reassignment of a phone number, the FCC reasoned:

4

> callers who make calls without knowledge of reassignment and with a reasonable basis to believe they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such.

(*Id.* at ¶ 72.)

Notwithstanding the application of common sense logic, the FCC majority believes a caller somehow acquires "constructive knowledge" of reassignment of a cell number based on a single unanswered call attempt, and nothing more. This issue too was challenged in the dissent, and is now on appeal. A stay will give the parties and the court the benefit of the appellate courts' directions and holdings.

### C. Pending Appeals.

Following the FCC Ruling, petitions for review were filed in the Seventh Circuit and the D.C. Circuit Court of Appeals.

#### 1. ACA appeal

ACA International (the Association of Credit and Collection Professionals) ("ACA") filed a petition for review with the United States Court of Appeals for the District of Columbia Circuit on July 10. (Klutho Dec., Ex. B (*ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir. filed July 10, 2015)).) ACA challenges (1) the FCC's "treatment of 'capacity' within the definition of an automatic telephone dialing system," (2) the FCC's "treatment of predictive dialers," and (3) the FCC's interpretation of the term "'prior express consent' (*including its treatment of reassigned numbers*)." (*Id.* italics added)

Specifically ACA asks the D.C. Circuit Court of Appeals to hold that the FCC's treatment of "capacity" is unlawful, and seeks to compel the FCC to "treat 'capacity' in a way that comports with a caller's right of due process and free speech." (*Id.*)

ACA also asks the court to reverse the FCC's treatment of "prior express consent, including the Commission's treatment of reassigned numbers," and compel the Commission to establish either a "viable safe harbor for autodialed 'wrong number' non-telemarketing calls to reassigned wireless numbers" or "define 'called party' as a call's intended recipient." (*Id.*)

### 2. PACE and Sirius Appeals.

PACE (the Professional Association for Customer Engagement, Inc.) filed its petition for review with the United States Court of Appeals for the Seventh Circuit on July 14, 2015. (Klutho Dec., Ex. C (*Prof'l Ass'n for Customer Engagement, Inc. v. FCC*, No. 15-2489 (7th Cir. filed July 14, 2015).) On the same day, Sirius XM Radio, Inc. ("Sirius") filed a similar petition for review with the United States Court of Appeals for the District of Columbia Circuit. (Klutho Dec., Ex. D (*Sirius XM Radio, Inc. v. FCC*, No. 15-1218 (D.C. Cir. filed July 14, 2015).)

PACE and Sirius both challenge the FCC's "expan[sion] [of] the TCPA's reach by sweeping in calls to wireless numbers made from equipment that *lacks* the present capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator,' and 'to dial such numbers.'" (Ex. C at 2; Ex. D at 2.)

Both petitions also challenge the FCC's definition of "'called party' for purposes of the TCPA's consent provisions as the 'current subscriber (or non-subscriber customary

6
Case 2:13-cv-01196-RTR   Filed 08/12/15   Page 6 of 11   Document 66

user of the phone)' rather than the 'intended recipient.'" (Ex. C at 3; Ex. D at 2-3.) PACE and Sirius ask the Seventh and D.C. Circuits, respectively, to declare the FCC's Declaratory Ruling and Order unlawful and vacate it. (Ex. C at 3; Ex. D at 2-3.)

## ARGUMENT

### A CONTINUED STAY OF THIS ACTION PENDING THE OUTCOMES OF APPELLATE DECISIONS WILL ASSIST THE PARTIES AND THE COURT.

Courts have inherent power to stay proceedings when doing so is in the interest of judicial economy. *See Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, (1936). The power to stay a case is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.*

While the FCC has issued its order, its order is appealable. As enacted by Congress, the Communications Act of 1934, ch. 652, 48 Stat. 1064 (codified as amended at 47 U.S.C.) provided a comprehensive scheme of federal regulation of wire and radio communication. *See generally Xavier University v. National Telecommunications*, 658 F.2d 306 (5th Cir. 1981). The Act established the Commission (FCC) as a part of this scheme and charged it with "executing and enforcing the provisions of the Act." 47 U.S.C. § 151 (1976). Because the Commission was given both enforcement and decision-making responsibilities, *see* S.Rep. No. 781, 73d Cong., 2d Sess. 8-10 (1934), Congress chose to provide for *judicial enforcement and review* of its orders.

As such, if a party wishes to challenge an FCC order, "it may seek relief by appealing directly to a United States Court of Appeals." *Gulf Power Co. v. United States*,

187 F.3d 1324, 1327 (11th Cir. 1999) (citing 47 U.S.C. § 402(a)). Among other things, the court of appeals is empowered to enter "a judgment determining the validity of, and enjoining, setting aside, or suspending, in whole or in part" the FCC's order." 28 U.S.C. § 2349(a). "[T]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—(1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342.

### A. Plaintiff's Claims Require Resolution of the Definition of an ATDS.

To prove her TCPA claims, Plaintiff must prove, in part, that PTI used an ATDS to call her cell phone. *See* 47 U.S.C. § 227(b)(1)(A)(iii). In this case, the telephony system used to call the subject number did not have the capacity to randomly or sequentially call phone numbers, nor does it have such capacity now. Under a plain reading of the TCPA, the PTI telephone system is not an ATDS. But the FCC has now tossed a monkey wrench into all of this.

In the end, resolving the TCPA claims in this case will require a <u>final</u> resolution of the definition of an ATDS under the TCPA. Although the majority of the divided FCC concluded that the capacity of an ATDS includes its "potential" functionalities, the pending petitions for appellate review directly challenge this conclusion and instead ask the appellate courts to define capacity to store or produce telephone numbers to be called in terms of "present capability" rather than theoretical and potential functionalities.

8

If the appellate courts hold that that an ATDS must possess a "present capability," Plaintiff's TCPA claims will fail for this reason alone. Hence, a continued stay would be in the interests of judicial economy.

    **B.**    **Plaintiff's Claims Also Require Resolution of the TCPA Liability for Calls Made to Reassigned Telephone Numbers, Including the Scope of the Safe Harbor.**

Even if PTI did utilize an ATDS, the resolution of Plaintiff's claims is still dependent on the scope of liability for calls made to reassigned phone numbers when the caller lacks knowledge of the reassignment. Every appeal from the FCC's Ruling challenges the FCC's conclusions regarding reassigned phone numbers and the scope of its safe harbor provision. Because the FCC's Ruling is not final in this respect either, a continued stay is warranted.

The Seventh Circuit has noted that "[c]onsent to call a given number must come from its current subscriber." *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 641 (7th Cir. 2012). Because the FCC has adopted a safe harbor for reassigned cell numbers, the appeal to the Seventh Circuit on the recent FCC Ruling asks the appellate court to revisit and overturn its *Soppet* decision; a decision made before the FCC issued its ruling on calls made after the subscriber to a cell phone number had changed. Additionally, all three appeals ask the appellate courts to hold the FCC's treatment of calls to reassigned telephone numbers unlawful and instead hold that the statutory "called party" reference means the intended recipient of a call.

Here, Plaintiff Gensel knowingly and voluntarily waited to notify PTI that she was not the person PTI was trying to reach. Plaintiff chose to forego alerting PTI that she was

9

the wrong party until after multiple call attempts were made in an effort to reach the actual consumer. In fact, the record demonstrates that Plaintiff was instead documenting the calls and allowing them to continue (on advice of counsel) before she finally answered one of the calls and only then did she notify PTI that it was calling the wrong party. Once she notified PTI, the calls stopped.

If the appellate courts interpret the safe harbor for autodialed "wrong number" calls as affording callers (e.g., and here, PTI) a common sense safe harbor that lasts until the person being called actually answers a call, and then tells the caller the actual person no longer has the now reassigned number, such a holding will also doom Plaintiff's case. Simply put, on this basis alone, Plaintiff's claims would fail.

To be sure, the FCC has ruled; but because appeals have been filed, Defendant PTI requests a continued stay on this case. The issues being appealed likely will be dispositive to this case. Moreover, this is not a case of actual damages and frankly not a damages case at all. Rather, Plaintiff chose, on advice of counsel, to attempt to create a purported claim. Not only did Plaintiff fail to mitigate her claimed "damages," she caused them. Such conduct should not be condoned, much less rewarded.

Most certainly, under the circumstances of this case, Plaintiff cannot be heard to complain of any prejudice if the stay in this matter were continued. In sum, the interests of justice as well as judicial economy combine to support a continued stay in this case pending resolution of the appeals.

## CONCLUSION

For the reasons set forth above, Defendant PTI respectfully requests that all aspects of this matter be stayed pending the resolution of the ACA, PACE, and Sirius appeals.

**BASSFORD REMELE**
*A Professional Association*

Date: August 12, 2015

By  s/*Michael A. Klutho*
Michael A. Klutho (#186302)
Jessica L. Klander (#392290)
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota 55402-3707
Telephone:   (612) 333-3000
Facsimile:    (612) 333-8829
mklutho@bassford.com
jklander@bassford.com
*Attorneys for Defendant*

1478129.docx