# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LENNETT GENSEL,**

    Plaintiff,

-vs-                                              Case No. 13-C-1196

**PERFORMANT TECHNOLOGIES, Inc.,**

    Defendant.

## DECISION AND ORDER

On January 28, 2015, the Court granted Performant Technologies, Inc.'s motion to stay this matter pending a ruling from the Federal Communications Commission on two petitions regarding the Telephone Consumer Protection Act ("TCPA"). The FCC issued its ruling on July 10, from which three appeals are currently pending, one in the Seventh Circuit and two in the D.C. Circuit. Now before the Court is Performant's motion to continue the stay pending the outcome of those appeals. This motion is granted.

The FCC ruled, as relevant here, that the TCPA's use of the term "capacity" in the definition of "automatic telephone dialing system," 47 U.S.C. § 227(a)(1), does not exempt equipment that lacks the "present ability" to dial randomly or sequentially. July 10, 2015 FCC Declaratory

Ruling and Order, ¶ 15. "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." *Id.* at ¶ 16.

The FCC also considered the issue of calls to reassigned telephone numbers. In this context, the FCC found that the statutory term "called party" refers to the "subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *Id.* at ¶ 73. The FCC did, however, create a very limited safe harbor for "callers who make calls without knowledge of reassignment and with a reasonable basis to believe they have valid consent to make the call." *Id.* at ¶ 72. Such callers "should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Subject to this exception, "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based." *Id.* at ¶ 73.

The Court's initial decision to stay this case was based upon the

- 2 -

primary jurisdiction doctrine, which "allows a federal court to refer a matter extending beyond the 'conventional experience of judges' or 'falling within the realm of administrative discretion' to an administrative agency with more specialized experience, expertise, and insight.'" *Arsberry v. Ill.*, 244 F.3d 558, 563 (7th Cir. 2001). Now that the FCC has ruled, Performant appeals to the Court's general power to manage its docket in the normal course of resolving cases. This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Performant pins its hopes on the expectation that the appellate courts, particularly the Seventh Circuit, will overrule the FCC. This seems unlikely on the number reassignment/safe harbor issue. The FCC split 3-2 on this issue, but the FCC majority expressly agreed with the Seventh Circuit that "the TCPA nowhere indicates that caller intent is relevant to the definition of 'called party.'" FCC Ruling at ¶ 78 (citing *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639-40 (7th Cir. 2012)). Put another way, the Seventh Circuit has already held that "[c]onsent to call a given number must come from its current subscriber," *Soppet* at 641, and three of the five FCC Commissioners generally agree with that conclusion,

subject to the limited safe harbor discussed herein.

That said, a contrary result seems more likely on the capacity issue. As explained by one of the dissenting Commissioners:

> The *Order* dramatically expands the TCPA's reach. The TCPA prohibits a person from making 'any call' to a mobile phone 'using any automatic telephone dialing system,' except in certain defined circumstances. The statute defines an 'automatic telephone dialing system' as 'equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. As three separate petitions explain, trial lawyers have sought to apply this prohibition to equipment that *cannot* store or produce telephone numbers to be called using a random or sequential number generator and that *cannot* dial such numbers.
>
> *That position is flatly inconsistent with the TCPA.* The statute lays out two things that an automatic telephone dialing system must be able to do or, to use the statutory term, must have the 'capacity' to do. If a piece of equipment *cannot* do those two things – if it *cannot* store or produce telephone numbers to be called using a random or sequential number generator and if it *cannot* dial such numbers – then how can it possibly meet the statutory definition? It cannot. To use an analogy, does a one-gallon bucket have the capacity to hold two gallons of water? Of course not.

Dissenting Statement of Commissioner Ajit Pai. The other dissenting Commissioner further expounded that it "seems obvious that the equipment must have the capacity to function as an autodialer *when the call is made* not at some undefined future point in time. … Not so according to the order. Equipment that could conceivably function as an

- 4 -

autodialer *in the future* counts as an autodialer *today*." Statement of Commissioner Michael O'Rielly Dissenting In Part and Approving In Part.[1]

Thus, it seems to the Court, as it seemed to the dissenting Commissioners, that the FCC majority's interpretation of the term "capacity" contradicts the plain language of the statute. If so, then the FCC's ruling on this issue is not entitled to deference on appeal. *See, e.g., Qwest Comm'n Int'l, Inc. v. F.C.C.*, 398 F.3d 1222, 1230 (10th Cir. 2005) ("If Congress has spoken, our inquiry ceases; the agency, as well as the court, must give effect to Congress's unambiguously expressed intent") (citing *Chevron U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842-43 (1984)). Finally, and most importantly, if the Seventh Circuit were to rule that "capacity" means "present capacity" in accordance with the plain language of the statute, such a ruling would be dispositive of the instant case because it is undisputed that Performant's telephony system did not and does not have the capacity to randomly or sequentially call phone numbers. Therefore, the Court finds that a stay pending the outcome of the appeals from the FCC's July 10 Declaratory Ruling and Order is in the interest of

---

[1] Commissioner O'Rielly continued, colorfully: "Indeed, the new definition is so expansive that the FCC has to use a rotary phone as an example of a technology that would not be covered because the modifications needed to make it an autodialer would be too extensive. That is like the FAA regulating vehicles because with enough modifications cars and trucks could fly, and then using a skateboard as an example of a vehicle that does not meet the definition."

judicial economy.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** Performant's motion to continue the stay [ECF No. 65] is **GRANTED**. Not later than **180 days** following the date of this Order, the parties are directed to file a joint status report advising the Court of the status of the appellate proceedings discussed herein.

Dated at Milwaukee, Wisconsin, this 20th day of October, 2015.

**BY THE COURT:**

_____
**HON. RUDOLPH T. RANDA
U.S. District Judge**